# Flynn v. Commonwealth.

January 16, 1951.

R. C. Tartar, Judge.

J. S. Sandusky for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE MOREMEN—Reversing.

Chester Flynn was convicted of having intoxicating liquor in his possession in local option territory for the purpose of sale and the punishment was fixed at a fine of $100 and costs, and imprisonment in the county jail for a period of thirty days. He assigns three grounds for reversal of the judgment: (1) the court erred in not sustaining appellant's motion for a peremptory instruction; (2) the commonwealth failed to produce the search warrant at the trial; and (3) the affidavit upon which the search warrant was issued was insufficient. We have concluded that the first ground is well taken and, therefore, it will not be necessary to discuss the other points raised.

Appellant, Chester Flynn, lives in the western part of Pulaski County. On a night in November 1949, Everett Dagley, deputy sheriff, Harold Yates, J. W. Grims-

ley, assistant jailer, and J. S. Strunk, county policeman, searched Flynn's residence.

Dagley testified that when the party arrived at Flynn's home, he and J. S. Strunk knocked on the door several times, and waited for appellant to get his clothes on; in five or ten minutes Flynn came to the door. J. S. Strunk and Harold Yates went in, while he searched the premises outside the house. He stated that he found no intoxicating liquors.

Harold Yates stated that while the party was waiting for Flynn to open the door, "I went on the back porch and tried the back door and it was locked and the shade was down on the door glass and someone was inside the kitchen, about where the kitchen stove was, pouring out some liquid out of a bottle or jug about the kitchen stove* * *." He returned to the front door, entered the house and, after the search warrant was read, the party opened the reservoir to the kitchen stove, found it contained one or two gallons of water which had the odor of clorox and which had had some whiskey poured in with it. He found within a foot or two of the stove a bottle of clorox, a bleaching compound, and four empty half pint whiskey bottles sitting on the floor with the bottle caps nearby. On the floor near the stove was a small amount of a substance which he stated was whiskey. He reached this conclusion by smelling it. He did not taste it.

J. W. Grimsley arrived at Flynn's home immediately after the other men, and was there when Yates came out of the house with a bottle in his hand. He tasted the contents of the bottle and was of the opinion that it was whiskey. He also tasted the liquid on the floor and said, "It was a bottle of whiskey on the floor, nothing funny tasting to that but there was alcohol in that other water." It is difficult to determine from this witness's testimony the exact nature of the substance he believes he found there, for example, on cross examination he stated:

"Q. 5. You did not find any whiskey? A. Yes, sir, found whiskey.

"Q. 6. How many gallons? A. I judge, counting the whiskey and all, two or three gallons.

"Q. 7. Who said that was whiskey? A. I said there was alcohol in it.

"Q. 8. How much clorox? A. There was liquor in it."

It was proven by several witnesses that appellant's reputation for dealing in intoxicating liquors was bad.

J. S. Strunk corroborated in general the testimony given by the other witnesses and in response to a question concerning what was found in the reservoir of the stove, answered, "Well, there had been clorox poured in there and liquor or either it smelled like it, the five bottles went in there, it smelled like it." He saw a wet spot on the floor but did not examine it.

Defendant and his wife, who testified on his behalf, denied that Flynn took more than two or three minutes to respond to the knock at their door and stated that there was no liquor in their house at the time the officers made the raid. They stated that they had jointly consumed the contents of the four or five half pint bottles that were found, which they had purchased for their own personal consumption, and that the water containing clorox had been poured into the reservoir of the kitchen stove for the purpose of cleaning it. They further stated that they did not at any time pour into the water reservoir of the kitchen stove any liquor nor between the time the officers knocked on the door and the time when it was opened to them, which seems to be the theory upon which the commonwealth based its case.

Appellant also produced a number of his neighbors who testified to his good reputation in the community in which he lives.

We believe that the testimony introduced in behalf of the commonwealth fails to establish that intoxicating liquor, possessed for the purpose of sale, was found on the premises. At most, the evidence discloses only minute traces of liquor with an accompanying odor. Each witness hazards his own guess as to the ingredients which made up contents of the reservoir of the stove, but no witness clearly and positively identifies any liquor which might conceivably be on hand for the purpose of sale. We believe that the proof adduced is not of the quality that warrants conviction.

It is true that a number of witnesses testified that appellant was reputed to be engaged in trafficking in intoxicating liquors, and KRS 242.390 reads: ''In any action for violation of this chapter, the general reputation of the defendant for bootlegging or being engaged in selling, or trading in, alcoholic beverages, or keeping or transporting them for sale, shall be admissible in evidence against him.''

But we have never held that evil reputation alone is sufficient to sustain conviction. Cravens v. Commonwealth, 205 Ky. 738, 266 S. W. 625; Gossett v. Commonwealth, 274 Ky. 215, 118 S. W. 2d 528; De Attley v. Commonwealth, 310 Ky. 112, 220 S. W. 2d 106, 107. In the De Attley case, the arresting officer found two pints of whiskey and a third pint bottle which was about one third full. Evidence of defendant's bad reputation for trafficking or keeping alcoholic beverages for sale in local option territory was produced in behalf of the commonwealth. We said: ''In the instant case there was just a fraction over two pints of liquor found in appellants' possession and some empty beer bottles and cans. The uncontradicted testimony was that the whiskey was for Charles De Attley's personal use and that the beer likewise had been for the personal use of his sister-in-law. While the jury is not compelled to accept the uncontradicted testimony of the accused as true, Dixon v. Commonwealth, 290 Ky. 469, 161 S. W. 2d 913, yet where the surrounding circumstances tend to support him and practically the only damaging evidence the Commonwealth has introduced is that of the bad reputation of the accused, a verdict of guilty is not supported by the evidence. We have many times written that a conviction in a criminal case cannot be sustained by evidence amounting to no more than a conjecture or suspicion, and when the evidence produces no more than that, a verdict should be directed in favor of the accused.''

In the De Attley case, over two pints of whiskey were found, and the jury was required to. surmise and speculate as to whether or not the defendant had the whiskey in his possession for the purpose of sale. In the instant case the jury was not only permitted to speculate concerning whether any intoxicating liquor for sale was found in appellant's possession, but in addition

was required to speculate as to whether appellant had any intoxicating liquor in his possession at all. We held in the De Attley case that the evidence must present more than a suspicion that the liquor seized was in possession for the purposes of sale. It follows that the evidence must, first, establish that liquor was found and, second, that it was possessed for the purpose of sale. The evidence produced in this case fails to establish either one of the two elements which must be proved before a conviction may be sustained.

The judgment is reversed with directions that if another trial is had and the evidence is substantially the same as that given on the first trial in the Circuit Court, the Court will direct a verdict in favor of appellant.